## Clarke's Estate.

*Decedents' estates — Partition — Parties — Tenants in common—Adverse possession.*

1. If one tenant in common sells the whole tract and possession be held adversely for twenty-one years, the sale and possession amount to an ouster of the other co-tenants, who are barred by the act of limitations.

2. An adverse holding by one tenant in common for any length of time, however short, before the institution of proceedings in partition in the Orphans' Court, is a bar to the jurisdiction of the court.

3. Where the husband of one tenant in common takes out letters *c. t. a.* on the estate of his wife's father, from which the estate was derived, and his wife takes a deed from him for the whole land and enters into possession of the same and holds adversely, the other tenants in common cannot maintain partition in the Orphans' Court, and this is so although the proceedings under which she obtained possession were illegal.

Petition for partition. O. C. Schuylkill Co.

*J. O. Ulrich*, for petition; *J. T. Mahoney*, contra.

WILHELM, P. J., Jan. 25, 1926.—Anna Theiss presented her petition, praying that an inquest in partition may be awarded in the estate of Thomas Clarke, deceased, and set out in said petition. that Thomas Clarke died on

June 19, 1867, leaving a last will and testament, duly recorded, and leaving to survive him his widow, who is now deceased, and a number of children and grandchildren named in the petition, and that the petitioner has a one-third interest in the estate of Thomas Clarke, and that Mary Murphy has a one-third interest and the children of Margaret Stapleton have a one-third interest, and that each of said parties has the right of possession in the real estate of Thomas Clarke.

That Thomas Clarke died seized and possessed of the real estate described in the petition, and that he died intestate as to said real estate; that the executors appointed by the will of Thomas Clarke qualified as such Oct. 25, 1869, and discharged their duties until Nov. 22, 1880, when they filed their renunciation; that Thomas Clarke empowered his executors to sell the real estate described in the petition "for the purpose aiding and assisting to pay debts, which has been incurred in my estate as is so ordered by me id together with the income which may be realized from my present estate;" that the executors named in the will did not sell said real estate; that on Nov. 22, 1880, the Register of Wills issued letters c. t. a. to Patrick Stapleton, husband of Margaret Stapleton, a daughter of Thomas Clarke, and said letters were issued improvidently, unlawfully and fraudulently; that on Oct. 19, 1893, said Patrick H. Stapleton, administrator, executed his deed to Margaret Stapleton, his wife, and thereby conveyed said real estate to Margaret Stapleton for the consideration of $100. Said deed was recorded in the office for the recording of deeds in and for Schuylkill County on Oct. 23, 1893, in Deed Book 237, page 338.

The petition recites that at the time of said conveyance there were no debts of said Thomas Clarke, deceased, and there were no liens against his real estate, and that Patrick H. Stapleton had no right, power or authority in law or under any order of court to make such conveyance or sale, and that said deed by Patrick H. Stapleton, administrator, to his wife, Margaret Stapleton, did not convey any title to the real estate; and that Margaret Stapleton died seized and possessed of her interest in said real estate as the same vested under the intestate laws.

That Margaret Stapleton died testate and her executor executed a deed for said real estate to Mary Ann Murphy, one of the daughters of Thomas Clarke, deceased, on Dec. 7, 1918, which deed is recorded in Deed Book No. 423, and that said deed did not convey any estate or title to Mary Ann Murphy, who by deed, dated Jan. 28, 1918, and recorded in Deed Book 419, page 301, sought to convey said real estate to her son, Thomas C. Murphy; that there are no improvements upon said real estate and no liens or encumbrances against it; that the parties in interest derive their interest in said real estate by virtue of the intestate laws, and that the parties named in the petition are all of the persons interested in said real estate.

An answer was filed by Thomas C. Murphy and Sarah L. Murphy, in which it is asserted that the petitioner is a granddaughter of Thomas Clarke and that she has no estate or interest in the real estate, and that Mary Murphy has no interest in the said real estate, and that the children of Margaret Stapleton have no interest in the real estate, and that none of the parties mentioned in the petition have any right of possession of the real estate.

That Thomas Clarke did not die intestate as to said real estate, and that said real estate was sold by Patrick H. Stapleton, administrator c. t. a., to Margaret Stapleton for the purposes directed by the will; that there were debts of the said Thomas Clarke, deceased, at the time Patrick H. Stapleton, administrator, conveyed said premises to Margaret Stapleton, and that the

Clarke's Estate.

entire title to the lot of ground was conveyed by said deed, and that Margaret Stapleton died seized and possessed of the entire title, and that a conveyance by her executor conveyed the entire title to Mary Ann Murphy, who was possessed of the entire title, and who conveyed said entire title to Thomas C. Murphy and Sarah L. Murphy, his wife.

That Mary Ann Murphy executed and delivered to the Security Building and Loan Association a mortgage, including the land described in the petition, on Dec. 7, 1918, to secure the payment of the sum of $1800.

Thomas C. Murphy and Sarah L. Murphy assert that they are the owners of said real estate and that no other person has any estate or interest therein, and that they and their predecessors in title have had open, notorious, continued, uninterrupted and adverse possession of said real estate for twenty-one years and upwards.

A replication was filed to the answer, and we are asked to dispose of the matter upon petition, answer and replication.

The Orphans' Court of each county, by virtue of the several acts of assembly, has jurisdiction in the partition and valuation of real estate within the county of any decedent when the real estate is held in common by the heirs and devisees of the decedent, but a tenant in common may prevent partition by an adverse claim of exclusive possession, and an adverse holding by one tenant in common for any length of time, however short, previously to the institution of proceedings in partition in the Orphans' Court is a bar to the jurisdiction of the court: Miller v. Miller, 60 Pa. 16.

In the case at bar, as established by the pleadings, there seems to be an adverse holding since the year 1893, when the deed executed by the administrator d. b. n. c. t. a. to Margaret Stapleton conveying the land in question was recorded, from which recording it may be inferred that Margaret Stapleton gave notice to all the world that she was holding said land adversely to the other heirs and legatees of Thomas Clarke. It is unnecessary to consider the question as to the legality of this conveyance, which is alleged to have been made in pursuance of directions contained in the will of Thomas Clarke. Neither is it proper in this proceeding to determine whether or not the appointment of Patrick Stapleton, administrator d. b. n. c. t. a., by the register was legal. His appointment was the judicial act of the register, and it may not be successfully attacked collaterally. The fact is undisputed that Margaret Stapleton gave notice to her brothers and sisters that she was holding the land adversely to them by placing her deed upon record in the recorder's office, and from this act on the part of Margaret Stapleton a jury may conclude it was an ouster of her co-tenants. It has been held: "If one tenant in common sells the whole tract, and possession be held adversely for twenty-one years, the sale and possession amount to an ouster of the co-tenant, who is barred by the act of limitations:" Culler v. Motzer, 13 S. & R. 356.

It was said in Bagwill's Estate, 16 Phila. 408: "The Orphans' Court has no jurisdiction to award an inquest when the respondent is in possession and claims the property as his own." And in Wall's Estate, 24 Pa. C. C. Reps. 560, it is held: "An adverse holding by one tenant in common for any length of time, however short, bars partition proceedings. To maintain partition proceedings, the heirs must be in actual possession of the premises."

Here we have not only the deed recorded in 1893 conveying the land, from the effect of which an ouster may be inferred, but we have subsequently recorded a deed from Margaret Stapleton to Mary Ann Murphy, dated Dec. 17, 1918, and recorded in Deed Book No. 423, conveying this land, and a deed conveying the same land by Mary Ann Murphy to Thomas C. Murphy, which

deed is dated Jan. 28, 1918, and recorded in Deed Book 419, page 301. Also, it may be noted that Mary Ann Murphy executed a mortgage including the land in question on Dec. 7, 1918, to secure the payment of the sum of $1800. All of these later conveyances may have given notice of adverse holding, as may have the first conveyance of 1893.

"An entry upon the whole of the land by one tenant in common, who takes possession as if it had been his own exclusively, and receives the rents, issues and profits thereof without accounting to his co-tenant for any part thereof, or proof of any demand upon him to do so, for twenty-one years, amounts to an actual ouster and will bar the other tenant in common of his right to have partition:" Law v. Patterson, 1 W. & S. 184.

"Open, notorious and uninterrupted possession of the whole by a tenant in common for twenty-one years, claiming the land as his own and taking the whole profits exclusively, is evidence from which a jury may draw the conclusion of ouster and adverse possession:" Coal Co. v. Quick, 61 Pa. 328.

It appears from the pleadings that Thomas C. Murphy and Sarah L. Murphy, and those under whom they claim, were in possession of the land for a number of years previously to the institution of this proceeding, and they now claim to be the sole owners. This state of facts presents a question of title which the Orphans' Court does not have jurisdiction to try and determine.

If the parties to this proceeding do not hold together, there can be no partition, and the Orphans' Court has no jurisdiction to continue the proceeding. The question of title must be settled in another forum. The validity of the claim of the respondents to sole ownership, and the dispute of that claim, presents a case for trial by jury, and cannot be further considered here.

And now, Jan. 25, 1926, the petition of Anna Theiss for "citation for partition" is dismissed without prejudice.        From M. M. Burke, Shenandoah, Pa.